NUMBER 13-07-679-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


RODOLFO GUERRERO, M.D., Appellant,


v.



JUAN LIMON AND ELIDA LIMON, Appellees.

 


On appeal from the 93rd District Court of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Benavides


Memorandum Opinion by Justice Yañez


 

 Appellant, Rodolfo Guerrero, M.D., appeals the denial of his motion to dismiss a
medical negligence lawsuit filed by appellees, Juan and Elida Limon. By a single issue,
appellant contends that the expert report submitted by appellees does not constitute a
good-faith effort to comply with the expert-report requirements. (1) Specifically, appellant
contends the report does not establish a causal link between the alleged negligence and
appellees' injuries. We affirm the trial court's order denying the motion to dismiss. 

Background


 Juan Limon went to the emergency room at Knapp Medical Center, complaining of 
a piece of meat lodged in his throat. An esophageal scope was used to dislodge the meat. 
S. Murthy Badiga, M.D., performed a dilation of Limon's esophagus, and Limon was
discharged. Approximately four hours later, Limon returned to the emergency room,
complaining of abdominal pain. A CT scan revealed a perforation in his esophagus. 
Guerrero attempted to surgically repair the perforation, and relied solely on a visual
inspection to determine that the perforation was closed. The repair was unsuccessful. 
Limon's condition deteriorated; he was transferred to McAllen Medical Center, where he
underwent an esophagectomy and esophageal exclusion. Limon developed acute renal
failure, which required dialysis. He was eventually transferred to a long-term care facility
on dialysis. 

 Jurisdiction 


 We begin by addressing our jurisdiction over this interlocutory appeal. Appellees
raise the issue of jurisdiction, noting that section 54.014 of the civil practice and remedies
code authorizes an appeal only from (1) an order that denies relief sought under section
74.351(b) and (2) an order that grants relief sought under section 74.351(l). (2) Since
appellees filed their brief, the supreme court has held that a challenge to the sufficiency
of an expert report is a challenge pursuant to section 74.351(b) that no compliant report
has been served. (3) Therefore, we have jurisdiction to consider appellant's interlocutory
appeal. (4) 

Standard of Review and Applicable Law


 We review the trial court's decision to deny a motion to dismiss under an abuse of
discretion standard. (5) The trial court is limited to reviewing the information within the four
corners of the report. (6) "An abuse of discretion occurs when a trial court acts in an arbitrary
or unreasonable manner or without reference to any guiding principles." (7) An appellate
court may not reverse for abuse of discretion simply because it would have decided the
matter differently. (8) 

 "With respect to resolution of factual issues or matters committed to the trial court's
discretion, for example, the reviewing court may not substitute its judgment for that of the
trial court." (9) The appellant must "establish that the trial court could reasonably have
reached only one decision." (10) Conversely, a trial court has no discretion in determining
what the law is or in applying the law to the facts. (11) "[A] clear failure by the trial court to
analyze or apply the law correctly will constitute an abuse of discretion." (12) 

 Section 74.351 requires that a plaintiff serve on each party "one or more expert
reports, with a curriculum vitae of each expert listed in the report for each physician or
health care provider against whom a liability claim is asserted." (13) An "expert report" is
defined as

 a written report by an expert that provides a fair summary of the expert's
opinions as of the date of the report regarding applicable standards of care,
the manner in which the care rendered by the physician or health care
provider failed to meet the standards, and the causal relationship between
that failure and the injury, harm, or damages claimed. (14)


A court must grant a motion to dismiss under section 74.351(b) if, after the 120-day
deadline has passed, it appears to the court that the report does not represent an
objective, good-faith effort to comply with the definition of an expert report. (15) 

 To qualify as a "good-faith effort," the report must "provide enough information to
fulfill two purposes": (1) it must "inform the defendant of the specific conduct the plaintiff
has called into question," and (2) it must "provide a basis for the trial court to conclude that
the claims have merit." (16) "A report that merely states the expert's conclusions about the
standard of care, breach, and causation does not fulfill these two purposes. Nor can a
report meet these purposes and thus constitute a good-faith effort if it omits any of the
statutory requirements." (17) 

Whether Appellant Waived Objections to Expert Report 


 Appellant was served with appellees' original petition on March 8, 2007. It is
undisputed that a copy of appellees' expert report was attached to the petition. Section
74.351(a) provides, in pertinent part, that a defendant must file and serve "any objection
to the sufficiency of the [expert] report not later than the 21st day after the date it was
served, failing which all objections are waived." (18) Appellant filed his objections to
appellees' expert report on May 23, 2007. Thus, appellees argue that because any
objections to the expert report were due by March 29--twenty-one days after the report
was served with the petition--appellant has waived any objections to the expert report. 

 Appellant responds that "the expert report which was evidently furnished with
[appellees' petition] does not satisfy the service requirement of Section 74.351 and
[appellant] did not waive his objections to such report by failing to object within twenty-one
days of his receipt of [appellees'] Original Petition." According to appellant, appellees did
not "serve" their expert report until May 2, 2007, along with their responses to appellant's
requests for disclosure. Appellant argues that because his objections to the expert report
were filed on May 23, 2007--within twenty-one days of May 2--his objections were timely
filed and are not waived.

 Assuming, without deciding, that appellant's objections to the expert report were
timely filed, they are without merit. Because we conclude that the trial court did not abuse
its discretion in determining that appellees' expert report constituted a good-faith effort to 
comply with the statutory requirements, (19) we decline to address appellees' waiver
argument. (20) 

Sufficiency of Expert Report


 Appellant contends that appellees' expert report "wholly fails to establish the
required causal link between Appellant's alleged breaches of the standard of care and
Plaintiff's injuries." According to appellant, appellees' report is not representative of a
good-faith effort because "the trial court and [appellant] are required to guess as to how
the alleged breaches of the standards of care caused [appellees'] injuries." We disagree.

 Dr. Miller's expert report provides, in pertinent part:

Dr. Guerrero's operative and surgical care was not within the standard of
care for treatment of an esophageal perforation. First of all, the standard of
care required that Mr. Limon be explored via the right chest to address the
perforation because the perforation was right-sided and more contamination
was seen in the right chest on the CT scan. Dr. Guerrero breached the
standard of care by performing the procedure through a left thoracotomy.


Dr. Guerrero was correct to try a primarily repair [sic] of the perforation
because it was less than 24 hours. However, his repair breached the
standard of care, technically. He was correct in debriding the necrotic
esophageal tissue but the full extent of the mucosa rupture was not identified
which required performing a limited myotomy both superiorly and inferiorly. 
The mucosal perforation is always longer than the muscular perforation. To
increase the chance of a successful repair a myotomy is a mandatory
requirement under the standard of care. Dr. Guerrero did not perform the
required myotomy and thus violated the standard of care. The standard of
care for repair of an esophageal perforation is a two-layer closure (mucosa
and muscle layers). Dr. Guerrero closed the perforation in a single layer with
just four stitches, which breached the standard of care. It is routine to
reinforce the perforation repair with vital tissue. Dr. Guerrero did place
pleural tissue over the repair site, but it should have been wrapped in a 360
degree fashion around the esophagus at the perforation repair site to prevent
slippage of the flap.


The standard of care also required that the integrity of the esophageal repair
be verified in the operating room prior to closure. Dr. Guerrero relied solely
on visual inspection to determine the integrity of the esophageal closure. 
The standard of care required confirmation of the integrity of the esophagus
by filling the chest with sterile water and injecting air through a nasogastric
tube to confirm absence of leakage following closure of the esophageal
musculature. The records contain no evidence that this was done, which
violated the standard of care. If the repair had been tested, the continued
leak would have been detected prior to surgical closure, in reasonable
medical probability.


To ensure the long-term success of repairing an esophageal perforation, the
standard of care required that there must be no distal obstruction of the
esophagus which would prevent the perforation from healing because of
persistent elevated intraluminal pressure. Specifically, the standard of care
required that Dr. Guerrero dilate the Schatzki's ring with a Maloney dilator
prior to and at the time of the repair. Dr. Guerrero failed to do so, and thus,
breached the standard of care. It was of interest at the time of esophageal
exclusion at McAllen Medical Center there was no mention of the flap on the
esophagus which may not have been performed at all. Finally, the patient
was inadequately covered for possible associated fungus infection related
to an esophageal perforation, which is one of the most common infections
resulting from an esophageal perforation. The standard of care required that
Dr. Guerrero give the patient antifungal antibiotics pre- and post operatively. 
He failed to do so and thus breached the standard of care. The patient was
not given antifungal antibiotics until he transferred to McAllen 5 days after the
perforation. As a result, Candida albicans, a fungus, was the only pathogen
that grew out from the mediastinal cultures at the time of esophageal
exclusion. Also, the patient' [sic] mediastinum and chest was inadequately
drained at the time of esophageal repair. Dr. Guerrero's negligent failure to
correct the perforation led directly to continued contamination of the chest
cavity and caused Mr. Limon to undergo a life-saving esophagectomy and
esophageal exclusion.

 

Drs. Badiga and Guerrero [sic] treatment of Mr. Limon breached the standard
of care for the treatment of an esophageal perforation. Their severe
negligence resulted in significant suffering, inability to eat, need for future
esophageal reconstruction to restore esophageal continuity, need for chronic
dialysis and potential lost [sic] of life because of delayed (5 days; mortality
greater than 80%) and correct treatment of an esophageal perforation for Mr.
Limon.


 We conclude that Dr. Miller's report provides the causal links between the alleged
negligence and appellees' injuries. Dr. Miller stated that appellant's "negligent failure to
correct the perforation led directly to continued contamination of the chest cavity and
caused Mr. Limon to undergo a life-saving esophagectomy and esophageal exclusion." (21) 
He also stated that "[a]s a result" of appellant's failure to give Mr. Limon antifungal
antibiotics, Mr. Limon developed a fungus infection. We conclude that Dr. Miller's expert 
report constituted a good-faith effort to satisfy the expert report requirement for the
causation element. (22) We overrule appellant's sole issue.

Conclusion 


 We affirm the trial court's order denying appellant's motion to dismiss.



 

 LINDA REYNA YAÑEZ,

 Justice




Memorandum Opinion delivered and filed

this the 28th day of August, 2008.

1. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (l), (r)(5)-(6) (Vernon Supp. 2007). Appellees
submitted an expert report by Daniel L. Miller, M.D., a professor of surgery at Emory University School of
Medicine and an expert in esophageal diseases. 
2. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9), (10) (Vernon 2008).
3. See Lewis v. Funderbunk, 253 S.W.3d 204, 207-08 (Tex. 2008); see also Gelman v. Cuellar, No.
13-07-00651-CV, 2008 Tex. App. LEXIS 6173, at *5 (Tex. App.-Corpus Christi August 14, 2008, no pet. h.). 
4. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9). 
5. Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 877-78 (Tex. 2001); see 

Gelman, 2008 Tex. App. LEXIS 6173, at *6. 
6. Palacios, 46 S.W.3d at 878. 
7. Moore v. Sutherland, 107 S.W.3d 786, 789 (Tex. App.-Texarkana 2003, pet. denied) (citing Garcia
v. Martinez, 988 S.W.2d 219, 222 (Tex. 1999)).
8. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex.1985). 
9. Walker v. Packer, 827 S.W.2d 833, 839 (Tex.1992).
10. Id. at 840. 
11. Id. 
12. Id.
13. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). 
14. Id.  § 74.351(r)(6). 
15. Id. § 74.351(l). 
16. Palacios, 46 S.W.3d at 879.
17. Id. 
18. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)
.
19. See id. § 74.351(r)(6).
20. See Tex. R. App. P. 47.1.
21. Emphasis added.
22. See Palacios, 46 S.W.3d at 879.